156 N.J. Super. 35 (1978)
383 A.2d 440
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES CHATMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 3, 1978.
Decided January 31, 1978.
*36 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. E. Neal Zimmerman, of counsel and on the brief).
*37 Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Richard W. Berg, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant Charles Chatman was found guilty by a jury of the murder of Robert Taylor in the second degree while armed, and was sentenced to consecutive State Prison terms totalling 24 to 27 years.
Defendant appeals, seeking a reversal of his convictions and modification of his sentences on the following grounds set forth in his brief:
POINT I The trial judge erred in refusing to permit defendant's witness, Peter DeForest, to testify as an expert.
POINT II The trial judge erred in permitting the results of the flameless atomic absorption analysis in evidence.
POINT III The trial judge erred in refusing defendant's motion to dismiss the felony murder portion of the indictment and by including that crime in the jury charge.
POINT IV The prosecutor in summation infringed upon the defendant's right to remain silent.
POINT V The totality of the circumstances surrounding the out of court identification procedure violated due process and tainted the subsequent in court identification.
POINT VI The trial judge committed reversible error in his rulings on the admission of evidence.
POINT VII The trial judge erred in denying defense counsel's motion for a mistrial based on the conduct of the trial judge.
POINT VIII The sentence imposed is manifestly excessive and should be reduced and modified.
We have carefully considered these contentions and all of the arguments advanced by defendant in their support. We find them to be clearly without merit. R. 2:11-3(e)(2).
The question of the scientific admissibility of results of the Flameless Atomic Absorption Analysis test apparently has not been decided in any reported decision in this State. The test is performed on swabbings taken of the back hand and palm of an individual suspected of firing a gun. The wipings are taken with cotton swabs saturated with a nitric acid solution. The results are analyzed by using either *38 Neutron Activation or Flameless Atomic Absorption. While the State's expert testified that the latter method was used here, apparently both methods achieve the same results.
In the Flameless Atomic Absorption Analysis method the nitric acid solution is extracted from the swab and placed on a metal strip in an instrument called the Flameless Atomic Absorption Spectrophotometer. The metal strip is heated, causing the elements present in the liquid to vaporize and form an atomic cloud. A light beam is passed through the cloud at specific wavelengths designed to detect the presence of barium and antimony. If these two elements are found in sufficient quantity, it signals the presence of gunshot residue. Neither barium nor antimony are elements commonly found in the environment. Scientific studies have compared these levels with those from the hands of individuals who have not handled or fired a gun. From the "hand blank" studies the Federal Bureau of Alcohol, Tobacco and Firearms (which conducted the test involved in the present case) determined that levels higher than .2 micrograms of antimony and .3 micrograms of barium indicate the presence of gunshot residue. However, both elements must be found together in the same sample at a quantity higher than that criteria to permit a positive conclusion to be reached. The State's expert, who personally conducted the analysis of the swabs taken of defendant's hands, determined that only the sample taken of defendant's left palm indicated the presence of gunshot residue. The reading of .66 micrograms of barium and .79 micrograms of antimony found on defendant's left palm indicated, according to the State's expert, that defendant handled a weapon with the palm of his left hand within four hours prior to the swabbings.
The general rule in this State regarding the admissibility of scientific test results is that if the equipment or the methodology used is proven to have a high degree of scientific reliability, and if the test is performed or administered by qualified persons, the results will be admissible at trial. State v. Walker, 37 N.J. 208, 215 (1962), cert. den. 371 *39 U.S. 850, 83 S.Ct. 89, 9 L.Ed.2d 86 (1962); State v. Hibbs, 123 N.J. Super. 108, 110 (App. Div.), on remand 123 N.J. Super. 152 (Cty. Ct. 1972), aff'd 123 N.J. Super. 124 (App. Div. 1973). On voir dire both the State's expert witness and the defense witness offered as an expert agreed that the Flameless Atomic Absorption Analysis method provided "unimpeachable" results in determining the levels of barium and antimony found in the samples tested. The only other jurisdiction which has apparently considered the same question has admitted such results as scientifically reliable. State v. Crowder, 285 N.C. 42, 203 S.E.2d 38, 47 (Sup. Ct. 1974), mod. on other grounds 428 U.S. 903, 96 S.Ct. 3205, 49 L.Ed.2d 1207 (1976) (death penalty vacated).
Moreover, the few jurisdictions which have had an opportunity to pass upon the admissibility of the results of gunshop residue tests performed by the alternate method of Neutron Activation have uniformly agreed that that method has sufficient scientific reliability to warrant its admission into evidence. Cf. United States v. Stifel, 433 F.2d 431, 435-441 (6 Cir.1970), cert. den. 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971). See State v. Johnson, 539 S.W.2d 493, 501 (Mo. Ct. App. 1976), cert. den. 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); State v. Ross, 523 S.W.2d 841 (Mo. Ct. App. 1975); State v. Spencer, 298 Minn. 456, 216 N.W. 2d 131 (Sup. Ct. 1974); People v. Pieropan, 72 Misc.2d 770, 340 N.Y.S.2d 31, 32-33 (Cty. Ct. 1973). See also, Annotation, "Admissibility of Evidence of Neutron Activation Analysis," 50 A.L.R.3d 117 (1973).
Defendant here attacks the Flameless Atomic Absorption Analysis, not because of the unreliability of its objective results, but rather for the interpretation and the ultimate conclusion drawn from the test results. Defendant claims that the State's expert used faulty criteria in determining that the levels of barium and antimony found on his left palm indicated the presence of gunshot residue. Such an argument, *40 however, refers not to the admissibility of the test but rather to the weight of the testimony to be given by the jury. People v. Collins, 43 Mich. App. 259, 204 N.W.2d 290 (Ct. App. 1972), cert. den. 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974). Under the circumstances we are satisfied that the trial judge was justified in concluding that the Flameless Atomic Absorption Analysis had sufficient scientific reliability for determining the presence of barium and antimony. Thus, the test results were properly admitted into evidence.
The trial judge, however, refused to qualify the witness defendant offered as an expert on this method of gunshot residue analysis. Defendant's expert admitted that he had never performed this specific test. However, he stated that he had done extensive reading on the subject and was quite familiar with the problems surrounding its utilization through this reading and study. The trial judge pointed to the witness' admission that he had never performed the test himself and thus found him unqualified to testify. Defendant claims that this ruling constituted reversible error.
A trial judge is vested with wide discretion in determining the competency of expert witnesses. An appellate court will not disturb the trial judge's determination "unless a clear abuse of discretion appears." Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 (1960). See also, Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950); Savoia v. F.W. Woolworth Co., 88 N.J. Super. 153, 161-162 (App. Div. 1965); Rockland Elec. Co. v. Bolo Corp., 66 N.J. Super. 171, 176 (App. Div. 1961).
Evid. R. 56(2)(b) requires that if a witness is testifying as an expert, testimony in the form of opinions or inferences shall be limited to such opinions as the trial judge finds are "within the scope of the special knowledge, skill, experience or training possessed by the witness." The test of the admissibility of expert testimony has been stated to be
* * * whether the witnesses offered as experts have peculiar knowledge or experience not common to the world which renders *41 their opinions founded on such knowledge or experience any aid to the court or jury in determining the questions at issue. [Rempfer v. Deerfield Packing Corp., 4 N.J. at 142]
The manner in which an individual's expertise is acquired is generally unimportant. A witness may be qualified to testify as an expert either "by study without practice or by practice without study." State v. Smith, 21 N.J. 326, 334 (1956); Rockland Elec. Co. v. Bolo Corp., 66 N.J. Super. at 176; Keuper v. Wilson, 111 N.J. Super. 489, 496 (Ch. Div. 1970). The modern tendency is to permit expert testimony wherever it would help the jury decide the ultimate issue of the case. See Biro v. Prudential Ins. Co. of America, 110 N.J. Super. 391, 400 (App. Div.) rev'd on other grounds, 57 N.J. 204 (1970). Of course, once the opinion testimony of an expert witness has been ruled admissible, his credibility and the weight accorded his opinion are matters resting within the province of the jury. Savoia v. F.W. Woolworth Co., 88 N.J. Super. at 162.
Although defendant's witness never personally performed a test for gunshot residue, he was not asked to testify about the mechanical procedures of the test itself. His testimony was sought to attack the ultimate conclusion testified to by the State's expert that sufficient amounts of antimony and barium were found on defendant's left palm to indicate that defendant handled a weapon around the time of the shooting. This type of testimony does not call for practical experience in performing the test. Rather it would merely require knowledge of the method and the results of the analysis. Defendant's witness testified that he had extensive knowledge of the Flameless Atomic Absorption Analysis. Thus, we hold to the view that defendant's witness was qualified to give the expert testimony sought to be elicited from him, and the trial judge erred in ruling to the contrary. Defendant had the academic qualifications, the "study without practice," to permit his testimony on interpreting test results.
However, this error does not require a reversal of defendant's conviction. Defense counsel conducted a skillful *42 and lengthy cross-examination of the State's expert. He elicited from the expert virtually all of the evidence he sought to obtain from him. Under the circumstances there was no prejudice to defendant by the trial judge's ruling in this regard. Beyond this, in view of the overwhelming evidence of guilt, the error did not reach dimensions "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).
Affirmed.