247 N.J. Super. 360 (1989)
589 A.2d 613
ALNETHA AND QUEENIE NESMITH, PLAINTIFFS-APPELLANTS,
v.
WALSH TRUCKING COMPANY AND DONALD P. BRADEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1988.
Decided February 27, 1989.
*362 Before Judges SHEBELL, GRUCCIO and LANDAU.
Charles Sovel argued the cause for appellants (Freedman & Lorry, attorneys; Stanley B. Gruber, on the brief).
Walter Koprowski argued the cause for respondents (Velardo & Koprowski, attorneys).
PER CURIAM.
Plaintiffs Alnetha and Queenie Nesmith appeal a judgment of no cause for action in favor of defendants Walsh Trucking Company and Donald P. Braden. Plaintiffs also appeal from the trial judge's order denying them a new trial. Plaintiffs sued for personal injuries sustained by Alnetha Nesmith who, *363 while working as a longshoreman, was struck by a tractor-trailer owned and operated by Braden while employed by Walsh Trucking.
These are the facts of the accident: Nesmith worked at the Broadway Marine Terminal in Camden, New Jersey, as a ship foreman, which required him to periodically walk back and forth from the ship to the yard where the cargoes were being stored. On December 11, 1984, while on his way back to the ship after completing one of his routine checks, a forklift crossed his path as he walked back toward the river. After waiting, he continued walking when a tractor-trailer struck him from behind, running over his left leg. At that moment, someone in the yard shouted and the truck came to a sudden stop. Braden was later identified as the driver of the tractor-trailer.
Two of Nesmith's coworkers, Raymond Oxner and Jessie Gallman, corroborated these facts. Oxner testified that he and Nesmith were on their way back to the ship when he was called away by one of the workers. He suddenly noticed a truck coming up behind Nesmith and yelled, "Al, Al, watch." However, there was so much noise in the area that the warning went unheard. Oxner said the truck's bumper hit and knocked Nesmith to the ground. At that moment, Gallman jumped off a chisel (forklift), ran toward the truck and banged on its front door. When the truck stopped Nesmith was found underneath the tandem wheels.
Gallman said he was on a forklift when he noticed a large truck hit Nesmith from behind knocking him to the ground. He also stated that the truck backed up over Nesmith's legs after it had come to a complete stop. A deposition from a coworker, Gilbert Henderson, slightly contradicted Nesmith's statements. Henderson said that the tractor-trailer was indeed travelling behind Nesmith but that one of its gas tanks hit Nesmith's leg when it suddenly veered to the right.
*364 Officer Ivan Holmes of the Camden Police Department testified that he had investigated the accident and prepared a report. He said Braden told him at the scene of the accident "that he saw [Nesmith] walking alongside a tow motor but ... he did not strike the victim." Accordingly, Holmes concluded that a contributing cause of the accident was driver inattention.
In their answers to plaintiffs' interrogatories defendants conceded that there had been contact between the tractor-trailer and Nesmith. However, Braden's version of the accident substantially differed from Nesmith's. Braden said he was driving his tractor-trailer behind a tractor-trailer driven by fellow Walsh employee Paul Bartell. He claimed Bartell's truck came to a sudden stop requiring him to bring his own truck to a stop approximately five feet behind. He then noticed a forklift travelling in the opposite direction. As the forklift approached he started to move the tractor-trailer forward slowly, looked into his right rearview mirror and noticed Nesmith underneath the tandem wheels on the right rear of his tractor. He then brought the tractor-trailer to an immediate stop.
Bartell corroborated this testimony stating that he was travelling in front of Braden and brought his truck to a stop in order to let a forklift pass by. He stated that a few minutes later he noticed a commotion at the pier and walked back to the site of the accident. There, he noticed Nesmith under the right rear tandem wheels of the tractor-trailer. Since he did not see the accident, he could not offer any details to police.
Other trial testimony established that the distance from the front of the tractor-trailer to the mid-point of the rear tandem wheels was approximately 12 1/2 feet. All witnesses agreed that after the tractor-trailer came to a stop, Nesmith's legs were between the rear wheels.
Over the objection of plaintiffs' counsel, defendants presented John Comiskey as an expert witness to render an opinion as to who was in the best position to avoid the accident. Although Comiskey's prior experience is in the field of highway safety, *365 the trial court concluded that he had sufficient education in traffic safety to qualify as an expert. This conclusion was primarily based on Comiskey's testimony that safety standards relating to highways apply to any situation involving vehicular and pedestrian traffic, including pier facilities. After listening to defense counsel's hypothetical questions, Comiskey concluded that Nesmith was in the best position to avoid the accident since he was "more maneuverable than the truck, and should have been aware of what was happening around him because he is more vulnerable."
Plaintiffs contend that the jury's determination that defendants were not negligent was erroneous. They claim the verdict was the result of either bias or a misunderstanding of the testimony or the law. As such, they claim that the verdict represents a "miscarriage of justice under the law" and seek a new trial.
R. 2:10-1 provides:
In both civil and criminal actions, the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court. The trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law.
In Dolson v. Anastasia, 55 N.J. 2, 258 A.2d 706 (1969), the court stated that the standard of appellate review is essentially the same standard controlling the trial judge. R. 4:49-1(a). However, the standard of appellate review is not limited to a determination of whether or not the trial court committed an abuse of discretion but rather the appellate court must determine whether or not there was a miscarriage of justice. See Carrino v. Novotny, 78 N.J. 355, 396 A.2d 561 (1979); State v. Johnson, 203 N.J. Super. 127, 495 A.2d 1367 (App.Div.), certif. den. 102 N.J. 312, 508 A.2d 195 (1985). When an appellate court reviews certain important aspects of a case, such as witness credibility and demeanor, it must give deference to the trial judge's "feel of the case." Dolson, 55 N.J. at 7, 258 A.2d 706.
*366 The evaluation of the reliability of witnesses and the weight of the evidence is a function of the jury. See Baxter v. Fairmont Food Co., 74 N.J. 588, 379 A.2d 225 (1977); Dolson, 55 N.J. at 2-3, 258 A.2d 706. Our review is limited to correcting an injustice resulting from the jury's obvious failure to perform its function and to determine whether the findings were reasonably reached on sufficient credible evidence. Ibid.
Here there is no dispute that there was contact between the tractor-trailer and Nesmith. There is also no dispute that two of the tractor's tires ran over Nesmith's leg and that he was found lying between the rear tandem wheels. The cause of the accident, however, is clearly in dispute.
Oxner and Gallman testified that they witnessed the accident in which the trailer struck Nesmith from behind. Both provided a detailed account of the accident. Officer Holmes also reported the accident as "driver inattention" after receiving a statement from Braden that he saw Nesmith but did not strike him. Braden, however, offered no explanation as to how the accident occurred. He simply stated that he noticed a forklift travelling in the opposite direction; that he slowly moved his truck forward, and that he looked in his rearview mirror and noticed Nesmith underneath the tandem wheels.
Defendants contend that since Nesmith's height (5'8") made it impossible for Braden to see him from the cab of the truck, Nesmith was in the best position to avoid the accident. Braden testified that he would have noticed Nesmith if he were standing at least three to five feet in front of the truck. He was certain that there was no one in front when he moved the truck forward. Other testimony indicated that Nesmith proceeded from an area where four-foot-high piles of freight were stored. Defendants contend that there was only a ten-foot gap from the storage area to the area where Nesmith was struck. Defendants posit that based on this evidence alone, the jury could have reasonably found that the size of the stacks of pipes, their close proximity to Braden's truck and the location of the *367 high/low made it impossible for Braden to see Nesmith prior to the accident. Accordingly, defendants concluded that the jury was clearly entitled upon the evidence to find Braden was not negligent.
Upon this testimony, we examine the evidence to determine whether the verdict represents a miscarriage of justice warranting a new trial. R. 2:10-1. In the performance of this function, we defer to the trial court's feel for the case, i.e., the intangibles not transmitted by the record, e.g., credibility, demeanor, etc. Dolson, 55 N.J. at 7, 258 A.2d 706. In the performance of this function, we are cautioned by the Supreme Court that a jury verdict from the weight of the evidence standard is impregnable unless so distorted and wrong in the objective and articulated view of a judge as to manifest with the utmost certainty a plain miscarriage of justice. Carrino, 78 N.J. at 360, 396 A.2d 561; Baxter, 74 N.J. at 588, 379 A.2d 225.
Here, the trial judge undertook to comprehensively review the trial testimony in his consideration of plaintiffs' application for a new trial. He said in part:
[T]here were certain discrepancies or conflicts in the testimony, but under all the circumstances giving regard to the opportunity of the jury to test  observe the manner and demeanor in which the witnesses testified to and make their assessment of the credibility of the various witnesses, I am giving regard to their opportunity to so evaluate the credibility, I cannot honestly say that I would, including my so-called feel of this case and including the manner in which it was presented and the testimony given, it basically was a determination for the jury to make based upon the evidence that it heard and saw exhibited here in court and its own assessment of the credibility and the weight to be given to the credible evidence.
....
Under the circumstances, I cannot in good conscience feel that the verdict rendered by the jury under the evidence that was present was such as to move me to believe that there was manifest denial of justice. The burden is upon the plaintiff to prove the manner in which the accident happened, that the jury apparently saw fit not to believe the version as portrayed by the plaintiffs in this matter. Under the circumstances, I am going to deny the motion for a new trial with respect as being against the weight of the evidence.
*368 Clearly, the trial judge was in the best position to make this determination and his carefully-considered judgment was contrary to plaintiffs' position.
We have carefully canvassed the record in fulfillment of our responsibility not to substitute our judgment for that of the jury but rather with a view to conscientiously and diligently review the record with the sole object of correcting clear error or mistake by the jury. Dolson, 55 N.J. at 6, 258 A.2d 706. Upon this review we cannot conclude that the trial judge was wrong in his determination of the motion for a new trial. Our review mandates that the verdict stand lest we intrude upon the rightful premise of the jury. Carrino, 78 N.J. at 366, 396 A.2d 561.
Additionally, plaintiffs contend that Comiskey was improperly allowed to testify as an expert because of his lack of experience in designing safety systems and controls which regulate the flow of vehicular and pedestrian traffic on shipping terminals and piers. They also contend that Comiskey failed to supply information which assisted the jury in understanding the evidence.
Evid.R. 19 provides:
As a prerequisite for the testimony of a witness there must be evidence that he has personal knowledge of the matter, or experience, training, or education, if such be required. Such evidence may be provided by the testimony of the witness himself. The judge may reject the testimony of a witness that he perceived a matter if he finds that no trier of fact could reasonably believe that the witness did perceive the matter. In exceptional circumstances the judge may receive the testimony of the witness conditionally, subject to the evidence of knowledge, experience, training or education being later supplied in the course of the trial.
Comment 1 to Evid.R. 19 states that the rule does not presume the existence of qualifications which a witness must possess in order to testify about an event or condition. If the witness has neither personal knowledge of a matter nor the special qualifications necessary to give an expert opinion about it, the testimony should not be admitted. Rule 19 does not however set forth the standard by which the trial judge is to determine *369 whether the witness has the requisite experience, training or education to give expert testimony. See N.J. Rules of Evidence (Anno. 1988), Comment 3 to Evid.R. 19. This determination is left up to the judge's discretion. In Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 72 A.2d 204 (1950), the court opined:
The qualifications of experts are left to the discretion of the trial court and the decision is conclusive unless clearly shown to be erroneous as a matter of law.... There was sufficient evidence to justify the ruling made below as to the witness' qualifications and we are not warranted on the record established in coming to an opposite determination. [Id. at 141, 72 A.2d 204].
This holding was reiterated in State v. Ravenell, 43 N.J. 171, 182, 203 A.2d 13 (1964), cert. den. 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572 (1965), where the court stated that "[t]he sufficiency of the qualifications of the experts was primarily a matter for the trial court's discretion and will be reviewed only for manifest error and injustice."
Evid.R. 56 provides:
(2) A witness qualified pursuant to Rule 19 as an expert by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
(3) Testimony in the form of opinions or inferences otherwise admissible under these rules is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact.
Expert testimony will not be admissible unless it assists the average juror to understand the evidence. See Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85, 168 A.2d 423 (App.Div. 1961). Thus, such testimony should not be permitted unless it relates to a subject matter which is so distinctively related to some science, profession, business or occupation as to be "beyond the ken of the average layman." State v. Kelly, 97 N.J. 178, 208, 478 A.2d 364 (1984). See also State v. R.W., 104 *370 N.J. 14, 30, 514 A.2d 1287 (1986). In Kelly, the court noted that Evid.R. 56 imposes
three basic requirements for the admission of expert testimony: (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony. (Citation omitted). [Id. 97 N.J. at 208, 478 A.2d 364].
In State v. Chatman, 156 N.J. Super. 35, 383 A.2d 440 (App.Div.), certif. den. 79 N.J. 467, 401 A.2d 224 (1978), we said "[t]he modern tendency to permit expert testimony wherever it would help the jury decide the ultimate issue of the case." Id. 156 N.J. Super. at 41, 383 A.2d 440. Here, Comiskey was qualified as an expert in the areas of traffic and safety engineering. He is a registered professional engineer with 30 years of experience as a traffic safety engineer. He was Senior Traffic Engineer with the Department of Law and Public Safety in New Jersey and Chief Safety Engineer and Traffic Engineer for the Pennsylvania Department of Highways. While he may have lacked experience in designing safety systems for the flow of traffic at piers or shipping terminals and his visit to the pier was under conditions different from those existing at the time of the accident, we cannot say he was unqualified to give an opinion as to whether a pedestrian or the vehicle operator had the best opportunity to avoid this accident or as to how the accident occurred. In this regard, the trial judge charged the jury as follows:
Now, you have heard some testimony from a witness who was qualified as an expert. The general rule is that witnesses can testify only to the facts that are known by them; the exception to this rule is that person whose knowledge and experience are such as to an [sic] enable them to better form an opinion than could the jurors and the Court are permitted to testify even though they are only giving their opinions. Testimony of that kind, as I have indicated, has been received in this case.
In considering the weight to be given to the opinion of an expert, you should determine whether those opinions are based upon established facts or conceded facts in the case, and you should also determine, however, whether his knowledge and experience make him better able to form opinions of fact than the jurors themselves. Such evidence is competent and it is admitted for the purpose of attempting to aid you in arriving at a conclusion. Now, you are not *371 required to accept arbitrarily the opinion offered or opinions offered; you should consider the expert's qualifications, training and experience, as well as his understanding of the matters to which he testified. Where an expert has offered an opinion upon an assumption that certain facts are true, it is for you, the jury to decide whether the facts upon which the opinion is based are true. The value and weight of an expert's testimony in such instances is dependent upon and no stronger than the facts upon which it is predicated. Now, as I say, you are not bound by any opinions of any expert, you should consider all of the evidence in the case and you should consider carefully the opinion evidence with all other evidence in the case, giving to it just such weight as you deem it is entitled to receive.
Surely Comiskey's testimony could have been of some worth in aiding the jury in its determination of fault. He was qualified to render an expert opinion based upon facts in evidence, his education, training and experience. Comiskey's testimony enhanced the "knowledge and understanding of the jurors" in an area "outside the usual lay-sphere." State v. Griffin, 120 N.J. Super. 13, 20, 293 A.2d 217 (App.Div.), certif. den. 62 N.J. 73, 299 A.2d 71 (1972). After setting forth the general rule regarding expert testimony and establishing the weight to be given such testimony, the trial judge specifically informed the jury that they need not blindly accept the expert opinion. He instructed the jury to first determine whether the facts upon which the expert opinion was based were true, then carefully consider the opinion with all other evidence giving it the weight it deemed appropriate.
Affirmed.
SHEBELL, J.A.D., dissenting.
I am unable to concur with my colleagues as I am convinced that the jury finding that defendants were free of negligence is contrary to the evidence and is clearly the result of improper expert testimony which invaded the province of the jury. Further, the trial judge gave weight to that improper expert testimony by charging the jury that the "witness ... was qualified as an expert ..." and was "better [able to] form an opinion than could the jurors and the Court...."
*372 We pointed out in Thompson v. Merrell Dow Pharmaceuticals, Inc., 229 N.J. Super. 230, 240, 551 A.2d 177 (App.Div. 1988) that Evid.R. 56 provides that even a witness who is qualified pursuant to Evid.R. 19 as an expert by virtue of his knowledge, skill, experience, training or education may only testify "if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue." It is upon this same basis that in State v. Kelly, 97 N.J. 178, 208, 478 A.2d 364 (1984) our Supreme Court enunciated the rule that there are three requirements for expert testimony to be admissible: (1) the testimony must concern a subject matter beyond the ken of the average juror; (2) the field must be at a state of the art such that the expert's testimony can be deemed sufficiently reliable, and (3) the witness must have sufficient expertise to offer the intended testimony.
Defendants' expert had no peculiar knowledge or experience with regard to the facts and circumstances of the accident in question so as to aid the jury or the court in determining the issues presented. See Butler v. Acme Markets Inc., 89 N.J. 270, 283, 445 A.2d 1141 (1982). The witness qualified as a traffic and/or safety engineer; however, the defense presented him "as an expert concerning the duties and responsibility of the individuals who are involved in the accident as to  he will testify as to the responsibilities of those individuals and what, in his opinion, the individuals who are involved could have, should have done to avoid the accident." These were matters uniquely within the ability and province of the court and jury. As plaintiffs' counsel noted at trial, this witness had no experience having "anything whatsoever to do with the safety and the conduct of individuals working on shipping terminals and piers," yet he was permitted to give his opinion as to whether it was the tractor-trailer driver defendant or the pedestrian plaintiff who had a better opportunity to have avoided the accident. This, to my view, was improper and unduly influenced the jury determination. Plaintiffs were thereby denied their right to a trial by jury, thus requiring reversal of the jury verdict, which *373 finding in any event constitutes a miscarriage of justice. R. 2:10-1.