**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4462-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL J. O'NEILL,

     Defendant-Appellant.

_____

Argued August 13, 2019 – Decided August 26, 2019

Before Judges Sumners and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Municipal Appeal No. 27-17.

Stephen M. Lukach, III argued the cause for appellant.

Dana R. Anton, Senior Assistant Prosecutor, argued the cause for respondent (Charles A. Fiore, Gloucester County Prosecutor, attorney; Dana R. Anton, on the brief).

PER CURIAM

Defendant Michael J. O'Neill appeals from his de novo conviction in the Law Division of driving while intoxicated (DWI), N.J.S.A. 39:4-50,[1] and raises the following arguments:

> POINT I
>
> DEFENDANT SHOULD BE ACQUITTED OF THE OBSERVATIONAL PRONG OF THE DWI STATUTE BECAUSE THE LAW DIVISION INAPPROPRIATELY CONSIDERED HGN TO PROVE INTOXICATION AT THE DE NOVO TRIAL AND FAILED TO ALLOW DR. GOOBERMAN TO TESTIFY AS TO THE PIN IN DEFENDANT'S ANKLE WHILE INAPPROPRIATELY DISCOUNTING OTHER DEFENSE EXPERT TESTIMONY.
>
> POINT II
>
> [THE] LAW DIVISION ERRED IN FAILING TO EXCLUDE THE ALCOTEST RESULTS BECAUSE THE STATE FAILED TO SATISFY THE TWENTY-MINUTE OBSERVATION REQUIREMENT DUE TO THE STATE'S RELIANCE ON INADMISSIBLE HEARSAY AND INSUFFICIENT TESTIMONY AS TO THE CORRECT TIME PERIOD. THUS, THE ALCOTEST READINGS SHOULD BE EXCLUDED AND INSUFFICIENT EVIDENCE OF THE PER SE VIOLATION EXISTS IN THE RECORD.

---

[1] In his merits brief, defendant does not challenge his concomitant convictions for failure to maintain lane, N.J.S.A. 39:4-88 and failure to stop, N.J.S.A. 39:4-81. As such, we deem any possible challenge to those convictions waived. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

A-4462-17T3

POINT III

THE LAW DIVISION'S APPARENT AGREEMENT WITH THE MUNICIPAL JUDGE IN THAT THE RULES OF EVIDENCE ARE RELAXED IN A DWI TRIAL WAS ERRONEOUS. THUS, THIS COURT SHOULD REVERSE THE CONVICTION ON THE PER SE AND OBSERVATIONS PRONGS FOR THIS REASON ALONE.

We agree the HGN test should not have been considered in determining if the State proved the DWI charge and that the State failed to prove by competent evidence the twenty-minute observation requirement was fulfilled. As such we reverse and remand.

In our limited scope of review following the trial de novo in the Law Division, we determine "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Our review of legal determinations, however, is plenary. See State v. Handy, 206 N.J. 39, 45 (2011).

We first determine defendant's contention the Law Division erred by agreeing with the municipal court judge's assertion that the Rules of Evidence are relaxed in municipal court is without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). The evidentiary rulings by the municipal court

3

judge do not control this case. In an appeal from a de novo hearing on the record, we "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001). In making her determination, the Law Division judge did not rule the Rules of Evidence were relaxed, as did the municipal court judge in the context of her determination of defendant's objection relating to a leading question.

Turning to the proofs related to the Alcotest results, our Supreme Court in State v. Chun, 194 N.J. 54, 140 (2008), noted the Alcotest is not subject to operator influences and observed one of the few tasks required of an Alcotest operator is to

> wait twenty minutes before collecting a sample to avoid overestimated readings due to residual effects of mouth alcohol. The software is programmed to prohibit operation of the device before the passage of twenty minutes from the time entered as the time of the arrest. Moreover, the operator must observe the test subject for the required twenty-minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence. In addition, if the arrestee swallows anything or regurgitates, or if the operator notices chewing gum or tobacco in the person's mouth, the operator is required to begin counting the twenty-minute period anew.
>
> [id. at 79.]

A-4462-17T3

The State, in compliance with the Court's prescription that "[n]otwithstanding this reduced role to be played by the operator as relates to the ultimate BAC [breath alcohol concentration] results reported . . . he or she [is required to] be made available for cross-examination [as] an important constitutional safeguard," id. at 140, produced the officer it contends made the twenty-minute observation in order to meet its burden to substantiate that "during the twenty-minute period immediately preceding the administration of the test, the test subject did not ingest, regurgitate or place anything in his or her mouth that may compromise the reliability of the test results," State v. Ugrovics, 410 N.J. Super. 482, 489-90 (App. Div. 2009).

The officer testified simply on direct examination: "I observed him for [twenty] minutes to make sure he was not burping, vomiting, not putting anything in his mouth. I made sure there was nothing in his mouth prior to the start of [twenty] minutes." On cross-examination, however, defense counsel elicited the basis for the officer's timing of the twenty-minute period:

> Q. All right. And you said you did the [twenty]-minute observation period, correct?
>
> A. Correct.
>
> Q. But you didn't time it yourself, did you?

A-4462-17T3

A. No. We have our Gloucester County Communications Dispatch, we have them start the timer through the radio, and then – through our communications – and once their timer's up for the [twenty] minutes as per the CAD[2] generator on our report systems, it shows that the [twenty] minutes starts and then [twenty] minutes later it documents when the timing ends.

Q. Do they radio you back and say the [twenty] minutes is done?

A. Yes.

Q. Okay. So you never observed the [twenty]-minute period. Someone else at dispatch did?

A. Yes.

Q. Okay. So that you don't know how much time that allows, correct?

A. I imagine it would be [twenty] minutes because it was common practice and it's documented in their report in the CADing system.

Q. But you don't know for sure because you weren't the one that actually observed the [twenty] minutes. It was someone at dispatch who then radioed back and said it's done.

A. We observed the [twenty] minutes. We have them do it to document the time so there's not a discrepancy of whether my phone was off by a couple minutes, et cetera.

---

[2] CAD is an abbreviation of computer aided dispatch. See State v. Chisum, 236 N.J. 530, 538 (2019).

Q.  Okay.  So someone else observed the [twenty] minutes.

A.  That is correct.

On redirect examination, the officer confirmed:

> Yeah, so we, when we first get to the station we determine that there's nothing in his mouth and he's not burping.  We have Gloucester County Communications start the [twenty]-minute timer on their end.  And once the [twenty] minutes is up, they contact us allowing us to know the [twenty] minutes observation is over, or the [twenty]-minute period is over.  And then that is when [the Alcotest operator] took him, after the [twenty]-minute period was over.

We glean from the record that evidence related to the software-safeguard that prohibits operation of the Alcotest "device before the passage of twenty minutes from the time entered as the time of the arrest," Chun, 194 N.J. at 79, was not introduced at trial.  Thus, the only proof that twenty minutes had elapsed was the statement from the dispatcher that it had.

We need not address whether the time from the CAD device was a hearsay statement or if the dispatcher's relay of that time was admissible, as the State contends, as a present sense impression under Rule 803(c)(1), N.J.R.E. 803(a)(1), because the dispatcher's statement – not the actual CAD-time itself – was testimonial requiring the production of the dispatcher for cross-examination even if the CAD-time was an admissible statement.  See State v. Sweet, 195 N.J.

357, 372 (2008) (holding "[t]he threshold inquiry Crawford requires is whether the challenged hearsay statement is testimonial"); see also Crawford v. Washington, 541 U.S. 36, 51-52, 59-61 (2004); Chun, 194 N.J. at 138-39.

Our Supreme Court interpreted Crawford as "barring the 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" State v. Buda, 195 N.J. 278, 304 (2008) (quoting Crawford, 541 U.S. at 53-54). The Court recognized that "the Crawford Court eschewed providing a comprehensive definition of the term 'testimonial,'" id. at 300, but stated "[t]he text of the Confrontation Clause . . . applies to 'witnesses' against the accused – in other words, those who 'bear testimony,'" ibid. (alterations in original) (quoting Crawford, 541 U.S. at 51); see also Sweet, 195 N.J. at 372.

Although the CAD time was arguably generated by the CAD device without human input or potential interference, and without targeted evidentiary use in a particular criminal case, thus rendering it nontestimonial, the time relayed by the dispatcher was a statement made for the purpose of meeting the State's obligation to prove by clear and convincing evidence that defendant was observed for twenty minutes prior to the administration of the Alcotest. Moreover, the relay by the dispatcher transformed what may have been a reliable

A-4462-17T3

machine-reading, see Chun, 194 N.J. at 147 (holding an Alcotest-generated Alcohol Influence Report (AIR) of data from breath samples, which cannot be influenced by the operator, was nontestimonial[3]), into evidence that is subject to manipulation, mistake or misconception. The Confrontation Clause requires that that testimonial evidence be subject to cross-examination because the dispatcher was a witness who bore testimony against defendant. Buda, 195 N.J. at 300. Our determination is not altered because the observing officer's direct testimony did not reveal the source of timing for the twenty-minute period. The Confrontation Clause cannot be skirted because the testimonial source of the officer's information was revealed through cross-examination after the State chose not to elicit that evidence.

We observe the Law Division judge based his conclusion that the State proved the twenty-minute observation requirement on the observing officer's testimony, found credible by the municipal court judge, that "he thought he waited [twenty] minutes." The Law Division judge found that testimony "to be

_____

[3] Although the AIR was ruled nontestimonial, the Court still required the Alcotest operator be made available for cross-examination and "the routine production in discovery of all of the foundational documents that might reveal some possible flaw in the operation of the particular device and . . . the core foundational documents that establish the good working order of the device be admitted into evidence." Chun, 194 N.J. at 148.

sufficient basis, coupled with that [twenty] minutes and the other three to five minutes from the other [Alcotest operator] officer" to prove the twenty-minute observation period. The judge also found "it took three to five minutes" after the Alcotest operator took custody of defendant from the observing officer to perform the preliminary setup of the Alcotest and that the operator "observed the defendant during that period of time and that the defendant was not burping, vomiting nor putting anything in his mouth during that period of time." The evidence does not support that finding; the operator testified only that he did not observe defendant put anything in his mouth. On cross-examination, the operator admitted:

> Q. You didn't check [defendant's] oral cavity for any kind of foreign substances?
>
> A. I did not.
>
> Q. You just tested him.
>
> A. Correct.

We also find no evidential basis for the Law Division judge's finding that "according to the [observing] officer he thought that he had waited [twenty] minutes." The evidence reveals that the officer admitted he did not time the period himself and did not offer his opinion or feeling that twenty minutes had elapsed. The officer relied solely on the time reported by the dispatcher.

A-4462-17T3

We will only disturb a trial judge's factual findings if they are unsupported by sufficient credible evidence in the record. Locurto, 157 N.J. at 471. The only evidence that the twenty-minute observation requirement was met was based on the dispatcher's timing and report thereof – and the dispatcher did not testify. Inasmuch as the State failed to prove that defendant did not meet its burden regarding the twenty-minute observation period, the Alcotest result cannot be used as evidence of defendant's DWI.

Turning to the observational proof of defendant's DWI, we apprehend that an officer's subjective observation of a defendant is a sufficient ground to sustain a DWI conviction. See State v. Cryan, 363 N.J. Super. 442, 456-57 (App. Div. 2003) (sustaining DWI conviction based on observations of defendant's bloodshot eyes, hostility, and strong odor of alcohol); see also State v. Cleverley, 348 N.J. Super. 455, 465 (App. Div. 2002) (sustaining DWI conviction based on officer's observation of the defendant's driving without headlights, inability to perform field sobriety tests, combativeness, swaying, and detection of odor of alcohol on the defendant's breath); Oliveri, 336 N.J. Super. at 251-52 (sustaining DWI conviction based on officer's observations of watery eyes, slurred and slow speech, staggering, inability to perform field sobriety tests, and defendant's admission to drinking alcohol earlier in the day).

A-4462-17T3

The Law Division judge correctly observed that the horizontal gaze nystagmus (HGN) test "has not been found to be scientifically reliable as a sole basis" to find defendant guilty of DWI but concluded "there are other factors that the court had at its disposal in order to consider not only the driving but the failure of the field sobriety test, the odor [of alcohol], and so there are other issues to be considered in addition to the HGN [test]. So they look at the totality of the circumstances as a basis." (emphasis added). Later, the court opined:

> The HGN [test] is admissible as long as that is not the sole basis of finding that the person was under the influence. There's certainly under the totality of the circumstances enough evidence in the record to find the defendant guilty even considering the HGN [test]. So it would be admissible as other evidence within the record to conclude by a totality of the circumstances.

It has long been held that, while the HGN test can be used to establish probable cause for a DWI arrest, it lacks sufficient scientific reliability to warrant admission as evidence of a defendant's guilt of a DWI offense. State v. Doriguzzi, 334 N.J. Super. 530, 546-47 (App. Div. 2000). Obviously the Law Division judge considered the HGN test as part of the "totality of the circumstances" in finding defendant guilty. We cannot, especially in light of our exclusion of the Alcotest results, deem the admission of the HGN test as harmless error. Ibid. We are therefore constrained to reverse and remand this

12

matter to the Law Division for a trial de novo on the record without consideration of the HGN test.

We determine the other issues raised by defendant, including the preclusion of his expert witness from testifying about the impact the pin in defendant's ankle[4] had on his field sobriety test performance, and the trial court's rejection of the expert's testimony regarding gastroesophageal reflux disease (GERD),[5] to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). We add only that at the conclusion of the defense's voir dire, the witness was proffered only "as an expert in the effects of drugs an[d] alcohol on the [human] body," not as a medical expert; defendant never submitted the expert's curriculum vitae to the State. He attempted to expand the witness's area of expertise to the medical field after the State completed its voir dire and objected to the expert. The only testimony the witness gave to support his qualification as a medical expert was on direct examination, during the 2017

---

[4] We note the officer testified that he believed defendant said he had a screw in his right ankle.

[5] Defendant did not advance any argument regarding the Law Division judge's conclusion that there is "no evidence in the record that defendant was suffering from GERD at the time of the Alcotest" in his merits brief. See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (stating that any issues not briefed on appeal are waived).

trial in municipal court, when he stated he was a practicing physician with a specialty in addiction medicine and that he completed a residency in internal medicine and "did primary care for a number of years before [he] specialized in addiction medicine," which became his sole practice area in 1995.

Reviewing the judge's ruling for clear abuse of discretion, State v. Chatman, 156 N.J. Super. 35, 40 (App. Div. 1978), under the proofs presented, we do not perceive that the judge abused her discretion in precluding the witness's testimony about the impact the hardware in defendant's ankle had on his field sobriety test performance.  "A trial judge is vested with wide discretion in determining the competency of expert witnesses."  Ibid.  Moreover, even if error, the preclusion did not result in a manifest injustice in light of defendant's self-assessment of his post-surgery abilities.  See State v. J.D., 211 N.J. 344, 354 (2012).  The observing officer, who was also the arresting officer, testified that defendant responded to the officer's question about any medical conditions that would affect his ability to perform a balance test by advising "that he did have a screw in his right ankle I believe it was, and he did advise me that it would not affect his balance and that he was okay to continue with the test."

Reversed and remanded to the Law Division to determine if the observational evidence alone, other than the HGN test, was sufficient to prove the DWI offense beyond a reasonable doubt. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4462-17T3