203 N.J. Super. 127 (1985)
495 A.2d 1367
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RANDALL JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1985.
Decided July 26, 1985.
*130 Before Judges MATTHEWS, FURMAN and HAVEY.
Audrey Bomse, Assistant Deputy Public Defender, argued the cause for appellant (Thomas S. Smith, Acting Public Defender, attorney).
Mildred Vallerini Spiller, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
*131 PER CURIAM.
Defendant was tried before a jury on charges of aggravated assault (N.J.S.A. 2C:12-1 b(1), count one); possession of a handgun without a permit (N.J.S.A. 2C:39-5 b, count two); possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4, count three), and aggravated assault with a deadly weapon (N.J.S.A. 2C:12-1 b(2), count four). The jury returned a verdict of guilty on all counts, and defendant was sentenced to a custodial term of ten years on count one, a custodial term of five years on count two, and a custodial term of ten years with a five year period of parole ineligibility on count three. The conviction on count four was vacated as it merged into count one. All sentences were ordered to run concurrently with each other and to a sentence defendant was already serving.
Defendant contends that the police did not adequately investigate and gather evidence in this case, and as a result, he was deprived of a fair trial. We are asked to extend the rule in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), so as to impose upon the police a duty to investigate "vigorously" every criminal case.
In Brady v. Maryland, the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused violates due process whether the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. "Materiality" has been held to be more than the mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial. United States v. Agurs, 427 U.S. 97, 109-110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).
Defendant, basing his argument on notions of due process, argues that the rule of Brady should be extended to require the police to investigate and gather evidence thoroughly. Since a trial is a truth-finding proceeding and all relevant facts must be *132 presented, he asserts that the police must investigate every conceivable aspect of a case to a defendant's satisfaction.
We agree that the objective of a trial is to ascertain the truth. Every conceivable fact relating to the case, however, need not be introduced. Under our system, counsel for each side is at liberty to decide what evidence to adduce at trial. Defendants themselves often do not testify or present certain witnesses if they feel it would be detrimental, although such testimony undoubtedly would be helpful in reaching the truth.
Brady cannot be read to be so broad as to impose upon the police a duty to investigate. The rule expressed is limited to those instances where the prosecution has information in its possession.
In United States v. Weisz, 718 F.2d 413 (D.C. Cir.1983), a somewhat analogous argument was raised. There the government, during its Abscam investigation, recorded some conversations with the Abscam targets but not others. Defendant argued that the government's failure to record or in some manner memorialize all conversations during the investigation deprived him of a fair trial and violated principles of due process. Weiz argued that the government had a duty to gather and maintain all the evidence that it could. It was held that the government was under no duty to create evidence. 718 F.2d at 436. See also United States v. Muzychka, 725 F.2d 1061 (3 Cir.1984). Similarly, in United States v. Butler, 499 F.2d 1006 (D.C. Cir.1974), the defendant sought to discover the results of a blood alcohol test claimed to have been performed on a sample of his urine taken by the police. Although the government acknowledged that the urine sample had been taken, it was unable to find any record indicating that the blood alcohol test had been performed. The case was remanded for an evidentiary hearing to determine whether the test had been performed. The Court held that if a test was performed, the government was required to preserve the results but if no test was made, that would end the matter. 725 F.2d at 1007-1008. *133 The Court clearly concluded that the government was under no obligation to perform a blood alcohol test and create the evidence sought by the defendant.
In this case, defendant contends that the police investigation was inadequate because the police failed to gather the names and statements of supposed witnesses and also failed to lift fingerprints from the gun that was found and later determined to be defendant's weapon. The first allegation is completely contrary to fact, and the second, without merit. Before the gun was turned over to police, a third party had handled it. Therefore, a test for inculpatory fingerprints would have been futile. In addition, no test could be performed to match the weapon with the bullet fired since the bullet is lodged in the victim's chest and cannot be removed. In any event, the evidence presented at trial overwhelmingly proved defendant's guilt beyond a reasonable doubt.
Defendant also contends that the jury verdict was against the weight of the evidence and therefore should be set aside. Defendant is precluded from raising this issue on appeal since he failed to make a motion for a new trial in the trial court on these grounds. R. 2:10-1; State v. McNair, 60 N.J. 8, 9 (1972); State v. Kyles, 132 N.J. Super. 397, 401 (App.Div. 1975).
Notwithstanding his failure to comply with R. 2:10-1, defendant contends that although he did not move for a new trial, he preserved the issue by moving for a judgment of acquittal under R. 3:18-1 at the close of the State's case. A motion made at the close of the State's case is controlled by a different standard than a motion for a new trial. On a motion for a judgment of acquittal, the standard is whether the evidence, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, is sufficient to enable a jury to find that the State's charge has been established beyond a reasonable *134 doubt. State v. Reyes, 50 N.J. 454, 458-459 (1967); State v. Kluber, 130 N.J. Super. 336, 341-342 (App.Div. 1974). The test on a motion for a new trial is whether there was a manifest denial of justice. See State v. Rodriguez, 141 N.J. Super. 7 (App.Div. 1976), certif. den. 71 N.J. 495 (1976). Simply put, the trial court was not presented with the opportunity to decide the new trial issue.
In any event, a jury verdict will not be set aside unless it clearly and convincingly appears that there was a miscarriage of justice under the law. R. 2:10-1; State v. Sims, 65 N.J. 359, 373-374 (1974); Dolson v. Anastasia, 55 N.J. 2, 7 (1969). The responsibility for determining whether the guilt of the accused has been proved beyond a reasonable doubt rests with the jury. State v. Haines, 18 N.J. 550, 565 (1955). Appellate review is limited to the correction of injustice resulting from a plain and obvious failure of the jury to perform its function. State v. Butler, 32 N.J. 166, 195 (1960). A reviewing court should not disturb the findings of a jury merely because it might have found otherwise upon the same evidence. State v. Hodgson, 44 N.J. 151, 162-163 (1965), cert. den. 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966); State v. Welsch, 29 N.J. 152, 155-156 (1959).
Here, the evidence overwhelmingly supports a finding of guilt. The victim of the crime positively identified defendant as the person who shot him. Moreover, Brian Walker, an eyewitness to the shooting, also positively identified defendant as the person who fired the gun. Further, the victim testified that defendant called him while he was in the hospital and admitted his guilt. We are satisfied that the record contains overwhelming evidence of defendant's guilt.
Defendant further contends that his convictions for counts two and three, possession of a handgun without a permit and possession of a weapon for an unlawful purpose should have merged with his conviction for count one, aggravated assault.
The required judicial analysis in merger issues has been codified in N.J.S.A. 2C:1-8 which provides that a defendant may *135 not be convicted of two offenses if one is a lesser included offense of the other. N.J.S.A. 2C:1-8 a(1). See State v. Mirault, 92 N.J. 492, 502 n. 10 (1983). The focus under this analysis is on the statutory elements. Illinois v. Vitale, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980); Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If each statute requires proof of a fact which is not required by the other, then the offenses are not the same and there is no merger. Blockburger v. United States, supra.
Under N.J.S.A. 2C:12-1 b(1), aggravated assault, the State is required to show that a person attempted to cause or caused serious bodily injury purposely or knowingly, or under circumstances manifesting extreme indifference to the value of human life recklessly caused serious bodily injury. Under N.J.S.A. 2C:39-5 b, the State must prove that a person knowingly had in his possession a handgun and that he has no permit to carry such handgun. Under N.J.S.A. 2C:39-4 a, in addition to proving knowing possession of a weapon, the State must prove an unlawful purpose. The two possession offenses have no elements in common with aggravated assault. It is clear that under Blockburger the crimes are completely separate and distinct.
State v. Davis, 68 N.J. 69 (1975), and State v. Best, 70 N.J. 56 (1976), set forth several factors to consider in determining whether an offense is the same for purposes of merger. These include (1) the nature of the offenses, (2) the time and place of each offense, (3) whether the evidence submitted as to one count of an indictment is necessary and/or sufficient to sustain a conviction under another count, (4) whether one offense is an integral part of the larger scheme, (5) the intent of the accused, and (6) the consequences of the criminal standards transgressed. 70 N.J. at 63; 68 N.J. at 81. Recently, in State v. Truglia, 97 N.J. 513, 521 (1984), the New Jersey Supreme Court, though not deciding which merger analysis should be used, noted that the Court is "more comfortable" in using the *136 "flexible approach" of Davis as opposed to a mechanical formula.
In the present case, possession of a handgun without a permit clearly does not merge with aggravated assault under any analysis. A guilty verdict on the possession charge could be reached without proof of the assault, and proof of the illegality of possession was not necessary for the aggravated assault charge. See State v. Leibowitz, 22 N.J. 102 (1956); State v. Morales, 127 N.J. Super. 1, 4 (App.Div. 1974).
Defendant, relying on the holding in State v. Best, supra, contends that possession of a weapon for an unlawful purpose and aggravated assault merge here because both offenses arose out of the same criminal transaction. In Best the defendant was convicted of armed robbery and possession of a knife for an unlawful purpose. The Court held that the conviction merged because there was no evidence that the defendant carried the knife at any time before or after the robbery, or possessed the knife for any purpose other than committing the robbery. 70 N.J. at 67. In this case, there was evidence that defendant had the gun before he encountered the victim, not for the purpose of shooting the victim but for the purpose of threatening another individual, Brian Walker. Thus, defendant was guilty of possession of a weapon for an unlawful purpose before he shot his victim. In addition, the fact that defendant carried a gun on his person, and that the shooting of the victim was in all likelihood unplanned, tends to establish that defendant carried the gun for an unlawful purpose wholly unrelated to the aggravated assault. The two crimes are therefore separate and distinct.
Defendant lastly claims that his aggregate sentence of ten years imprisonment with a five year period of parole ineligibility, for second degree aggravated assault, second degree possession of a weapon for an unlawful purpose and third degree unlawful possession of a weapon without a permit is excessive.
*137 The New Jersey Supreme Court has held that the focus of the Code of Criminal Justice is "upon the gravity of the offense and not the blameworthiness of the offender." State v. Roth, 95 N.J. 334 (1984); State v. Hodge, 95 N.J. 369 (1984). The correct approach to proper sentencing must be that "the punishment fit the crime, not the criminal." State v. Hodge, 95 N.J. at 375.
In evaluating the appropriateness of the sentence imposed, an appellate court must satisfy itself that the trial court properly applied the standards and guidelines of the Code. State v. Hodge, 95 N.J. at 376. If the Code guidelines were properly followed, the sentence may be then modified only where it "shocks the judicial conscience." State v. Roth, 95 N.J. at 363. We find no mistaken exercise of judicial discretion nor do we regard the sentence imposed to be manifestly excessive.
Affirmed.