677 A.2d 1120

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v. DEMETRIUS M. DIAZ, DEFENDANT-
RESPONDENT.

Argued November 27, 1995—Decided July 3, 1996.

*Joseph Connor, Jr.,* Assistant County Prosecutor, argued the cause for appellant (*W. Michael Murphy, Jr.,* Morris County Prosecutor, attorney).

*Susan M. Chagrin,* Assistant Deputy Public Defender, argued the cause for respondent (*Susan L. Reisner,* Public Defender, attorney).

*Gerard C. Sims, Jr.,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised in this appeal is whether a conviction for possession of a firearm for an unlawful purpose should merge with a conviction for passion/provocation manslaughter when the trial court did not instruct the jury with respect to an unlawful purpose that was broader than, and separate from, using the firearm to commit the homicide.

We hold that failure to use a special verdict is not dispositive of the merger issue. Merger is not required when the evidence submitted to the jury is sufficient to permit it to determine that defendant possessed the firearm for an unlawful purpose independent of the greater offense, here a homicide, and when the jury has been properly instructed and those instructions do not restrict the jury's consideration of the unlawful purpose only to commission of the greater offense for which defendant was found guilty.

I

Defendant was twenty-two years old when he injured his hand in a brawl and had to wear a cast. A few days after that fight, he was walking through a crowded playground when Gregory Ricky Gordon bumped into defendant's injured hand. Defendant believed that Gordon deliberately bumped into his hand to show

disrespect. According to defendant, Gordon then taunted him about being injured in the prior brawl.

After the encounter with Gordon, defendant left the playground for less than one half hour and returned with two friends, Orlando Diaz and Anticious "Shorty" McGhee. Defendant knew before reentering the playground that Shorty was carrying a handgun.

Defendant approached Gordon and warned that he had a gun. Gordon retorted that he also had a gun. Defendant threatened Gordon to stay away before defendant "put something in [Gordon] they [cannot] take out." In response, Gordon jeered at defendant. Defendant and Gordon exchanged angry words and began to fight. Shorty fired one shot into the air.

Very shortly after firing that shot, Shorty handed the gun to defendant. Defendant then approached Gordon and shot him five times. Two of the fatal shots were fired into the victim's back. As it turned out, Gordon was unarmed. Gordon died that night from the gunshot wounds.

After firing those shots, defendant fled the scene with Gordon's cousin, Jeremiah German, in hot pursuit. German testified that as he followed defendant, defendant turned towards German and repeatedly told him, "Don't come near me, he made me do it." German further stated that as defendant made those statements, he "crunched [the gun] in his pants."

Defendant was indicted for purposeful or knowing murder, *N.J.S.A.* 2C:11–3a(1) and (2), and possession of a firearm for an unlawful purpose contrary to *N.J.S.A.* 2C:39–4a.

A jury found defendant guilty of second-degree passion/provocation manslaughter, *N.J.S.A.* 2C:11–4b(2), and second-degree possession of a firearm for an unlawful purpose.

At sentencing, defense counsel argued that the possession of a weapon conviction should merge with the passion/provocation manslaughter conviction because defendant possessed and used the gun solely for the purpose of committing the substantive offense. The State argued against merger, asserting that defen-

dant constructively possessed the gun when threatening Gordon prior to the shooting. Further, the State contended, defendant used the gun for the purposes of shooting Gordon and then threatening German.

The trial court declined to merge the offenses, finding they were essentially dissimilar. The court reasoned that defendant was in joint constructive possession of the gun with Shorty in order to be prepared for an expected altercation. The court concluded that the unlawful purpose was separate and distinct from the manslaughter because defendant had gone "home to get the weapon, carr[ied] the weapon, and ma[de] threats with the weapon." Defendant was sentenced for manslaughter to a custodial term of ten years with five years of parole ineligibility, and to a consecutive term of seven and one half years with three and one quarter years of parole ineligibility on the possessory offense.

The Appellate Division in an unpublished opinion reversed and ordered merger. The court found, however, that the evidence was sufficient to support a conviction that defendant constructively possessed the gun when threatening Gordon and when he used the gun to ward off German as he fled from the scene after the shooting. The Appellate Division concluded, nonetheless, that merger was required because the trial court failed to instruct the jury properly with respect to determining whether defendant possessed the weapon for a broader unlawful purpose than shooting Gordon. We granted the State's petition for certification to review the propriety of the merger. 142 *N.J.* 450, 663 *A*.2d 1357 (1995).

## II

The State argues that merger was not warranted because the Appellate Division found that there was "considerable evidence regarding defendant's continued possession of the weapon after the shooting and [defendant's] reliance on the gun to ensure his flight from the scene and from those attempting to apprehend him." The State further contends that defendant's "purpose to

use the gun to ensure his flight is separate from the purpose to shoot Mr. Gordon." The State reasons that because "the jury instructions did not limit the jury to the theory that defendant possessed the handgun to [only] shoot Mr. Gordon," a general verdict returned by the jury on the possessory offense should not merge based on a sufficiency of the evidence standard as viewed by the court. The Attorney General, as *amicus curiae*, asserts the same position and adds that requiring special jury verdicts on possessory offenses is both unnecessary and unwise.

Although defendant did not object to the jury instruction with respect to the possessory offense, he argues that merger was required because the jury was not asked to determine whether the possessory offense consisted solely of the unlawful purpose to use the gun against Gordon or for a different unlawful purpose.

A charge of possession of a "firearm with purpose to use it unlawfully against the person or property of another" under *N.J.S.A.* 2C:39–4a requires proof of four elements. Those elements are: (1) the object possessed was a "firearm" within the meaning of *N.J.S.A.* 2C:39–1(f); (2) the firearm was possessed by defendant as defined in *N.J.S.A.* 2C:2–1c; (3) the defendant's purpose in possessing the firearm was to use it against the person or property of another; and (4) the defendant intended to use the firearm in a manner that was unlawful. *State v. Harmon*, 104 *N.J.* 189, 212, 516 *A.*2d 1047 (1986).

The focus of the charge is on a defendant's purpose in possessing the firearm. *State v. Mieles*, 199 *N.J.Super.* 29, 41, 488 *A.*2d 235 (App.Div.), *certif. denied*, 101 *N.J.* 265, 501 *A.*2d 933 (1985). Mere possession of a firearm in and of itself does not establish a purpose to use it unlawfully. The purpose of the possession must be illegal and existent "at whatever time the State claims that the [possession for an unlawful purpose] offense took place." *State v. Petties*, 139 *N.J.* 310, 321, 654 *A.*2d 979 (1995) (quoting *State v. Harmon, supra*, 104 *N.J.* at 210, 516 *A.*2d 1047).

The State is not required to prove a defendant's original purpose in possessing a firearm. Although in many cases the unlawful purpose or subjective intent of a defendant required to be established by the State may be inferred from the totality of the circumstances, including the use of the weapon, a conviction based on the use of the weapon is not a required precondition to a conviction for the possessory offense. *State v. Petties, supra,* 139 *N.J.* at 316, 654 *A.*2d 979; *State v. Latimore,* 197 *N.J.Super.* 197, 211, 484 *A.*2d 702 (App.Div.1984), *certif. denied,* 101 *N.J.* 328, 501 *A.*2d 978 (1985).

The fact patterns frequently relied on by the State to establish the unlawful purpose fall into one of two categories or a combination thereof. In the majority of cases, the charge of possession of a firearm for an unlawful purpose "is coupled with a charge of an act accomplished with the gun—a robbery, an assault, a homicide—which the court tells the jury is unlawful." *State v. Jenkins,* 234 *N.J.Super.* 311, 315, 560 *A.*2d 1240 (App.Div. 1989). Under those circumstances, the use of the firearm to commit the substantive offense such as robbery, assault or homicide, provides the factual underpinning for drawing an inference that the firearm was possessed for an unlawful purpose. *State v. Daniels,* 231 *N.J.Super.* 555, 559–60, 555 *A.*2d 1180 (App.Div. 1989). When the only unlawful purpose in possessing the gun is to use it to commit the substantive offense, merger is required.

A second fact pattern relied on sometimes by the State to establish the unlawful purpose may be independent of the commission of the substantive offense. If a defendant assaults or murders a convenience store clerk with an object found in the store, and then uses a gun on his or her person to threaten eyewitnesses not to identify him or her, the unlawful purpose in possessing the firearm is unrelated to the commission of the assault or murder. Merger is, therefore, not required.

Merger is also not required under the following set of facts. A defendant uses a gun to commit a substantive offense such as

robbery and then also uses the gun to frighten and prevent eyewitnesses from informing the police or to force a person to provide protective shelter. Under that fact pattern, the defendant's purposes in possessing the gun were first to use it to commit the substantive offense against one victim, and then to use it to threaten a person other than the victim of the substantive offense. *State v. Johnson,* 203 *N.J.Super.* 127, 136, 495 *A.2d* 1367 (App.Div.), *certif. denied,* 102 *N.J.* 312, 508 *A.2d* 195 (1985).

*N.J.S.A.* 2C:1–8a establishes the legislative parameters for merger of offenses. The Legislature "defines the unit of prosecution or 'offense' and ordains its punishment." In the sentencing context, the federal "constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio,* 432 *U.S.* 161, 165, 97 *S.Ct.* 2221, 2225, 53 *L.Ed.2d* 187, 194 (1977); *accord Missouri v. Hunter,* 459 *U.S.* 359, 368–69, 103 *S.Ct.* 673, 679, 74 *L.Ed.2d* 535, 543–44 (1983). Similarly, merger issues implicate a defendant's substantive state constitutional rights that are rooted in principles of double jeopardy, due process, or some other legal tenet. *State v. Dillihay,* 127 *N.J.* 42, 46–47, 601 *A.2d* 1149 (1992); *State v. Cole,* 120 *N.J.* 321, 327, 576 *A.2d* 864 (1990). The purpose of merger is to avoid double punishment for a single wrongdoing. *State v. Brown,* 138 *N.J.* 481, 561, 651 *A.2d* 19 (1994); *State v. Cole, supra,* 120 *N.J.* at 325–27, 576 *A.2d* 864; *State v. Davis,* 68 *N.J.* 69, 77, 342 *A.2d* 841 (1975).

The standard for merger of offenses set forth at *N.J.S.A.* 2C:1–8, providing that offenses are different when each requires proof of facts not required to establish the other, has been characterized as "mechanical." *State v. Truglia,* 97 *N.J.* 513, 520, 480 *A.2d* 912 (1984). A preferred and more flexible standard was articulated in the pre-code case of *State v. Davis,* 68 *N.J.* 69, 342 *A.2d* 841 (1975). *State v. Dillihay, supra,* 127 *N.J.* at 47, 601 *A.2d* 1149. In *Davis,* the Court observed:

Such an approach would entail analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.

[*State v. Davis, supra,* 68 *N.J.* at 81, 342 *A.*2d 841.]

The Appellate Division applied the *Davis* test in the present case and concluded that the facts could support separate convictions for manslaughter and possession of the gun for an unlawful purpose under theories of constructive and actual possession. The court also noted that the offenses involved different victims at different times. *See State v. Truglia, supra,* 97 *N.J.* at 521, 480 *A.*2d 912 (holding merger of possession for an unlawful purpose offense is not required when possession offense and aggravated assault with weapon offense could have occurred at different times). The Appellate Division observed that the trial court did not instruct the jury regarding constructive possession.

The Appellate Division further found that despite considerable evidence that defendant possessed the gun after shooting Gordon for an additional independent unlawful purpose, merger of the possession conviction with the manslaughter conviction was required. The court reasoned that merger was required because the jury did not

"determine by separate verdicts whether the possession was solely with the unlawful purpose to use the weapon against the victim or victims of the substantive offense, or with a broader unlawful purpose." *State v. Petties,* 139 *N.J.* 310, 320 [654 *A.*2d 979] (1995). Since the possession conviction is not based on actions separate from the actual shooting, merger is required. *Cf. State v. Truglia,* 97 *N.J.* 513, 521–22 [480 *A.*2d 912] (1984).

We reject defendant's contention that when a court is unable to determine from the verdict whether the jury found a broader purpose, despite the sufficiency of credible evidence and the adequacy of jury instructions, the possessory offense must merge with the substantive offense. We hold that when a trial court declines to use a special verdict but there is sufficient evidence before the jury to support a finding of a broader purpose

to use the weapon unlawfully, *see United States v. Powell,* 469 U.S. 57, 67, 105 *S.Ct.* 471, 478, 83 *L.Ed.*2d 461, 470 (1984); *State v. Reyes,* 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967), and the trial court gives a proper jury instruction that does not include an instruction that the unlawful purpose is the same as using the weapon to commit the substantive offense, merger is not required.

When the jury's verdict is ambiguous, we adopt the approach to merger set forth in *State v. Williams,* 213 *N.J.Super.* 30, 516 *A.*2d 265 (App.Div.1986), *certif. denied,* 107 *N.J.* 104, 526 *A.*2d 177 (1987):

(1) the defendant must have been charged in the indictment with possession of the weapon with a broader unlawful purpose, either generally or specifically, than using the weapon to kill or assault the victim of the greater offense, (2) the evidence must support a finding that the defendant had a broader unlawful purpose, (3) the judge must have instructed the jury of the difference between possession with the specific unlawful purpose of using the weapon against the victim of the greater offense and a broader unlawful purpose and (4) the verdict must express the jury's conclusion that the defendant had a broader unlawful purpose.

[*State v. Williams, supra,* 213 *N.J.Super.* at 36, 516 *A.*2d 265.]

The first two requirements were satisfied in the present case. First, defendant was charged in the indictment with murdering Gregory Gordon and with possession of a "firearm with the purpose to use it unlawfully against the person of another." The indictment did not limit the victim of the possessory offense to only Gordon. *Cf. State v. Williams, supra,* 213 *N.J.Super.* at 36, 516 *A.*2d 265 (observing that where indictment charged defendant with possession of weapon for purpose of using it against victim of greater offense, merger is required). Although the indictment in the present case charged only one count of unlawful possession of a weapon, which was without specification of conduct or victim, a defendant can be convicted under only one theory when multiple theories are submitted to a jury under a single count.

Second, the evidence revealed that defendant used the gun to ensure his flight from the scene while German attempted to stop and possibly apprehend him. Defendant made the gun's presence known to German by manipulating it in his hands and pressing it

against his pants. Furthermore, had the jury received a proper instruction, the evidence was sufficient to permit it to find that defendant was in constructive possession of the gun when he threatened Gordon. Both of those unlawful purposes were independent of the homicide. Therefore, "in this case, as long as the jury could have found that possession for an unlawful purpose existed [by defendant at any time before or after the shooting,] ... then the jury was entitled to return a verdict of guilty for a violation of *N.J.S.A.* 2C:39–4a," provided that the jury was instructed properly. *State v. Petties, supra,* 139 *N.J.* at 316, 654 *A*.2d 979.

The third factor under *Williams* was not satisfied. Although the jury was instructed that the State bore the burden of proving beyond a reasonable doubt that defendant had actual—not constructive—possession of the gun for the "purpose or conscious objective" of using it unlawfully "against the person or property of another," the trial court did not instruct the jury what the alleged unlawful purposes were based on the evidence presented. The trial judge was required to "relate the specific unlawful purpose charged to the facts of the case." *Id.* at 321, 654 *A*.2d 979; *accord State v. Concepcion,* 111 *N.J.* 373, 379, 545 *A*.2d 119 (1988). That requirement is essential because "[a] jury is not qualified to say without guidance which purposes for possessing a gun are unlawful under *N.J.S.A.* 2C:39–4a and which are not." *State v. Jenkins, supra,* 234 *N.J.Super.* at 316, 560 *A*.2d 1240. The trial court "must guide the jury [with jury instructions] in its determination of the unlawful purposes alleged." *State v. Petties, supra,* 139 *N.J.* at 319, 654 *A*.2d 979. To achieve that objective, a proper jury instruction "must include an identification of such unlawful purposes as may be suggested by the evidence." *Id.* at 320, 654 *A*.2d 979 (citing *Williams, supra,* 213 *N.J.Super.* at 36–37, 516 *A*.2d 265). Because of the improper jury instructions, we do not know, and may not assume, that the verdict on possession of the gun for an unlawful purpose was for a broader unlawful purpose than the manslaughter. Accordingly, the fourth factor under *Williams* also was not satisfied.

This Court has consistently held that "[a]ccurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." *State v. Concepcion, supra,* 111 *N.J.* at 379, 545 *A.2d* 119. Moreover, the failure to provide proper jury instructions may constitute plain error. *State v. Brown,* 138 *N.J.* 481, 522, 651 *A.2d* 19 (1994). In criminal cases, erroneous jury instructions are "almost invariably regarded as prejudicial," *State v. Vick,* 117 *N.J.* 288, 289, 566 *A.2d* 531 (1989), and are "poor candidates for rehabilitation under the harmless error philosophy." *State v. Weeks,* 107 *N.J.* 396, 410, 526 *A.2d* 1077 (1987); *State v. Grunow,* 102 *N.J.* 133, 148, 506 *A.2d* 708 (1986). Improper jury instructions, however, do not require merger of offenses when the evidence is sufficient to support convictions on both the substantive and possessory offenses. *State v. Petties, supra,* 139 *N.J.* at 321, 654 *A.2d* 979.

Cases have held that merger is not required notwithstanding an ambiguous jury verdict when the evidence supports a broader unlawful purpose. *State v. Cole, supra,* 120 *N.J.* at 325, 335, 576 *A.2d* 864; *State v. Miller,* 108 *N.J.* 112, 120, 527 *A.2d* 1362 (1987); *State v. Truglia, supra,* 97 *N.J.* at 521, 525, 480 *A.2d* 912; *State v. Goode,* 278 *N.J.Super.* 85, 88, 650 *A.2d* 393 (App.Div. 1994); *State v. Russo,* 243 *N.J.Super.* 383, 411–12, 579 *A.2d* 834 (App.Div.1990), *certif. denied,* 126 *N.J.* 322, 598 *A.2d* 882 (1991); *State v. Johnson,* 203 *N.J.Super.* 127, 136, 495 *A.2d* 1367 (App. Div.), *certif. denied,* 102 *N.J.* 312, 508 *A.2d* 195 (1985). In contrast, the court in *State v. Mieles, supra,* found that the evidence was insufficient to support a conviction for possession of a gun for an unlawful purpose. *State v. Mieles, supra,* 199 *N.J.Super.* at 41, 488 *A.2d* 235. When the jury is explicitly instructed that the unlawful purpose was to use the gun against the victim of the substantive offense, unless that unlawful purpose extended over a substantial period, merger is required notwithstanding that the evidence was sufficient to support a separate unlawful purpose. *State v. Williams, supra,* 213 *N.J.Super.* at 36, 516 *A.2d* 265.

■ In the present case, not only were the jury instructions insufficient to have permitted a finding of a broader unlawful purpose, the prosecutor in summation did not argue that there was in fact a broader unlawful purpose. The prosecutor focused only on the killing and never mentioned the existence of the unlawful possession charge. His only comment that may have been intended to relate to that charge was that defendant "began to back up. And what did he say? Stay your distance [German]. Again, with the gun, stay your distance." The prosecutor, however, never argued that the quoted language could support a broader unlawful purpose. Because of the way the prosecutor presented the case to the jury and the way the jury was instructed, we conclude that the only unlawful purpose submitted to the jury was possession of the gun to use it in the killing. Under the circumstances of this case, merger is required.

### III

Next, we address whether special verdicts should be mandated in all cases in which a defendant is charged with a substantive offense and possession of a weapon for unlawful use against another person or property. Defendant urges this Court to mandate special verdicts to protect his constitutional rights. The State and the Attorney General, on the other hand, urge the Court not to mandate special verdicts because such a requirement would be contrary to the flexible approach to merger adopted in *State v. Davis, supra,* and *State v. Cole, supra.*

The Appellate Division misinterpreted this Court's decision in *State v. Petties, supra.* There, the Court stated:

> To resolve issues of merger of weapons offenses with substantive counts, a court may ask the jury to determine by separate verdicts whether the possession was solely with the unlawful purpose to use the weapon against the victim or victims of the substantive offense, or with a broader unlawful purpose. *See State v. Williams,* 213 *N.J.Super.* 30, 36–37, 516 *A.2d* 265 (App.Div.1986) (explaining that although defendant may have intended to use firearm for broader unlawful purpose—threatening associates of victim—jury instruction on charge of possession for unlawful purpose was limited to unlawful use against victim, thus requiring merger), *certif. denied,* 107 *N.J.* 104, 526 *A.2d* 177 (1987). *State v. McAllister,* 211

*N.J.Super.* 355, 364–67, 511 *A.*2d 1216 (App.Div.1986) contains a suggested form of a verdict sheet, which can be revised to fit the needs of each case.

[*State v. Petties, supra,* 139 *N.J.* at 320–21, 654 *A.*2d 979.]

The Appellate Division transformed *Petties'* suggested method of handling the merger issue in some cases into an absolute requirement in all cases. Although the Appellate Division did not cite *State v. Lado,* 275 *N.J.Super.* 140, 645 *A.*2d 1197 (App.Div.), *certif. denied,* 138 *N.J.* 271, 649 *A.*2d 1290 (1994), it reached the same result, namely that "in the absence of a special verdict, ... the possession of a weapon with an unlawful purpose conviction must merge into the substantive offense." *Id.* at 158, 645 *A.*2d 1197. Although *Petties* suggested the use of special verdicts in some cases, it did not mandate using them in all cases. *Petties* involved five counts of assaults, two counts of possession of weapons for unlawful purposes, one count of unlawful possession of a handgun without a permit and ten lesser-included offenses. *State v. Petties, supra,* 139 *N.J.* at 313–14, 654 *A.*2d 979. A retrial on the two unlawful purpose charges was ordered because the jury was not instructed on what the alleged unlawful purposes were. *Id.* at 321, 654 *A.*2d 979. *Petties* is a clear example of a case in which special verdicts ought to be used.

We agree with the State and the Attorney General that requiring trial courts to use special verdicts or verdict-based analysis in all cases in which a defendant is charged with possession of a weapon for an unlawful purpose and a greater offense may substantially reduce the sentencing court's discretion on merger issues. Such a bright-line requirement would be contrary to the flexible approach to merger adopted in *State v. Davis, supra,* and *State v. Cole, supra.* Notwithstanding that special verdict sheets may tend to limit that flexibility, the objectives achieved in using special verdict sheets in certain compelling cases outweigh any diminished benefits associated with the flexible approach to merger.

We recognize that the use of special interrogatories in criminal cases is discouraged because of "their potential for destroying the

ability of the jury to deliberate upon the issue of guilt or innocence free of extraneous influences. That potential for harm inheres in the subtly coercive effect interrogatories can have upon the course of a jury's deliberations." *State v. Simon,* 79 *N.J.* 191, 199–200, 398 *A.*2d 861 (1979). The subtle coercive effect is manifested in requiring the jury to make specific findings of fact.

Most of the risks inherent in the use of special interrogatories are not present in special verdict sheets that have been properly prepared and submitted to the jury with appropriate instructions. Special verdict sheets that list only the charges and lesser-included offenses under an indictment, and do not list the elements of the offenses, are unlikely to be confusing or have any coercive effect on the jury. When multiple offenses are submitted to a jury, special verdicts are often helpful to an orderly deliberative process. The use of special verdicts was approved in *State v. Petties, supra,* 139 *N.J.* at 320–21, 654 *A.*2d 979. Furthermore, *Rule* 3:19–1(b) permits trial courts, in their discretion, to submit special verdicts to juries "to facilitate the determination of the grade of the offense under the Code of Criminal Justice or otherwise simplify the determination of a verdict when multiple charges are submitted to the jury."

Consistent with *State v. Petties, supra,* 139 *N.J.* at 320–21, 654 *A.*2d 979, *State v. Simon, supra,* 79 *N.J.* at 202, 398 *A.*2d 861, and *Rule* 3:19–1(b), when there is a compelling need for the use of special verdicts, the trial court in its discretion should use them to avoid reversal of ambiguous verdicts. A compelling need might arise in a case involving multiple counts in the indictment that may include lesser-included offenses. In such cases, juries may be asked to determine the degree of offenses, or provide information that would assist the judge in making merger determinations at sentencing. If, as in the present case, a charge of possession of a weapon for an unlawful purpose is submitted to a jury on multiple theories of liability under a single indictment or count thereof, a special verdict greatly facilitates merger determinations.

We therefore reaffirm the propriety of using the type of written special verdict sheets recommended in *State v. McAllister, supra,* 211 *N.J.Super.* at 365–67, 511 *A.*2d 1216. The way in which juries should use special verdict sheets must, however, be explained to the jury in the general jury instructions. Further, descriptive labels may be used to distinguish the weapon, the victim, and the unlawful purpose for offenses charged under *N.J.S.A.* 2C:39–4 without running afoul of the proscription against listing elements of an offense on the special verdict sheet. The special verdict sheet in the present case did not conform to *McAllister* because it was limited to a single unspecified "possession of a weapon for an unlawful purpose."

### IV

As modified, the judgment of the Appellate Division is affirmed.

*For modification and affirmance*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.