**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2487-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MELITON ALVAREZ,

    Defendant-Appellant.

_____

Submitted March 11, 2025 – Decided April 11, 2025

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 21-03-0236.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Leon Grauer, Assistant Deputy Public Defender, and Laura B. Lasota, Deputy Public Defender II, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Kaili E. Matthews, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant was convicted of third-degree resisting arrest, fourth-degree endangering the welfare of another, and disorderly persons harassment. After a sequential bench trial, defendant was convicted of petty disorderly persons disorderly conduct and acquitted of disorderly persons obstructing the administration of law. Defendant received an aggregate one-year suspended sentence. The charges stemmed from an incident at the Hard Rock Hotel and Casino during which defendant became obstreperous when security and New Jersey State Police officers confronted his friend for failing to follow COVID-19 protocols in place at the time.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> BECAUSE ANY ALLEGED FORCE OR VIOLENCE OCCURRED ONLY AFTER [DEFENDANT] HAD ALREADY BEEN ARRESTED AND WAS AWAITING PROCESSING AT THE POLICE SATELLITE OFFICE, THE STATE FAILED TO PROVE ALL THE ELEMENTS OF RESISTING ARREST, REQUIRING REVERSAL.
>
> POINT II
>
> DESPITE [DEFENDANT] REQUESTING THE INSTRUCTION AND A RATIONAL BASIS FOR IT IN THE RECORD, THE COURT FAILED TO CHARGE THE JURY ON OBSTRUCTION AS A LESSER-RELATED OFFENSE OF RESISTING

ARREST, REQUIRING REVERSAL OF [DEFENDANT'S] CONVICTION ON COUNT TWO.

Based on the record and the applicable legal principles, we affirm.

I.

We glean these facts from the trial record. At about 10:00 p.m. on October 10, 2020, Carl Lowe, an assistant security manager at the Hard Rock Casino (Casino), was dispatched to Pit 5 on a report of disorderly conduct by a patron who was being disruptive and not abiding by the Casino's mask policy. The Casino had recently reopened and had implemented a strict mask mandate due to the COVID-19 pandemic.

Upon arrival, Lowe observed a man with "his mask down," "yelling" and "causing a scene," while security officers attempted to remove him from "the casino floor." Lowe recalled that the man, later identified as Albin Griffin-Brea, was accompanied by another patron, later identified as defendant. In addition to pulling his mask down, Griffin-Brea was reportedly "licking his hand" and "touching the [gaming] chips." According to Lowe, although both men "appeared to be intoxicated," defendant's initial demeanor was "calm." In fact, Lowe said, at first, defendant was trying to "calm [Griffin-Brea] down." However, Lowe testified that after "approximately" fifteen to twenty minutes, Griffin-Brea still refused to calm down or leave the Casino even after being

3

warned that New Jersey State Police would be contacted. As a result, the New Jersey State Police Casino Operations Unit was called. The Unit was responsible for policing "the casino floor in all . . . nine [Atlantic City] casinos."

Four plain-clothes State Police detectives responded and identified themselves as police both "verbally" and with "identification" in the form of "a billfold wallet" that said "State Police." Upon their arrival, the atmosphere shifted. Lowe testified that Griffin-Brea "actually calmed down a little bit" but defendant became "upset" and "disorderly" and "started flipping out, kind of making a scene and yelling." Detective Sergeant Mark Devine was one of the responding detectives. Devine described defendant as "agitated, angry for some reason," and "definitely . . . intoxicated." Devine recalled that defendant was "yelling," "boisterous," "flailing his arms," and "pointing at people."

According to Devine, he did not "understand what [defendant] was saying" during the encounter because defendant was speaking Spanish, and Devine had received "minimal training when it comes to speaking Spanish." The police "talked to . . . Griffin-Brea, and asked him to tell . . . defendant[] that [they were] with the State Police and try to calm him down." However, defendant refused to calm down. He became even "more agitated and . . . angry," and was "putting his hands" in the detectives' faces and "touching them." After

several minutes of trying to "de-escalate the situation," defendant and Griffin-Brea were "escorted" to a New Jersey State Police satellite office about forty or fifty yards away from Pit 5, and the decision was made to charge defendant with disorderly conduct for "creating a disturbance on the casino floor" and "disrupting casino operations."

While enroute to the office, "defendant was still upset, still irate and disorderly." When they arrived at the office, defendant "attempted to leave," but Devine told him to stop because he was detained at that point. Defendant disregarded the order and proceeded toward the exit door where Devine was standing. When Devine blocked defendant's path and "pushed him back," defendant "tried to punch" Devine but missed. Devine was able to subdue defendant by pushing him "down to the ground" in an attempt to handcuff him. Defendant resisted by repeatedly "tuck[ing]" his hands "underneath" his body. Eventually, defendant was handcuffed by three detectives and placed on a bench.

During the struggle on the ground, defendant hit his head and was bleeding from "his face, . . . mouth and nose area." After the detectives handcuffed him, defendant "spit blood and saliva" onto Devine's pants and into "the face" of Detective Andrew Sciarretta. Sciarretta testified that as defendant attempted to spit at him a second time, he "jab[bed]" defendant in his right eye to reposition

5

his face.  Because defendant "continued to spit," a spit hood was placed on defendant "to capture . . . th[e] spit" and avoid "expos[ing] anybody to saliva or blood-borne pathogens."  Emergency Medical Services was also contacted to transport defendant to the hospital for treatment of his injuries.

During Lowe's and Devine's testimony, the jury watched portions of two videos of the incident captured on the Casino's surveillance system.  Both videos depicted interactions between defendant and security and State Police officers on the casino floor.  Neither video captured the events that took place in the satellite office and neither recording had audio.

Defendant was subsequently charged in an Atlantic County indictment with third-degree aggravated assault on a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a) (count one); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a) (count two); and fourth-degree endangering the welfare of another, N.J.S.A. 2C:24-7.1(a)(2) (count three).  Spitting blood and saliva into Sciarretta's face formed the evidential basis for the aggravated assault and endangering counts.  A complaint/summons charged defendant with disorderly persons obstructing the administration of law, N.J.S.A. 2C:29-1(a), and petty disorderly persons disorderly conduct, N.J.S.A. 2C:33-2(a)(1).

A-2487-22

The jury found defendant guilty of petty disorderly persons harassment, 2C:33-4(c), as a lesser included offense of aggravated assault (count one); third-degree resisting arrest (count two); and fourth-degree endangerment (count three). In a sequential bench trial, the trial judge found defendant guilty of disorderly conduct but acquitted defendant of obstruction. Thereafter, the judge granted defendant's post-trial motion for a judgment of acquittal on the endangerment charge, R. 3:18-2, but denied defendant's motion for a new trial, R. 3:20-1. In so doing, the judge rejected defendant's contention that the court erred by not instructing the jury on disorderly persons obstruction as a lesser-included offense of resisting arrest, but agreed that there was an insufficient factual basis in the record from which a jury could conclude the State established "a substantial risk of serious bodily injury" to Sciarretta beyond a reasonable doubt to support the endangering charge. The judge imposed a suspended sentence and entered a conforming judgment of conviction on April 5, 2023. This appeal followed.

II.

In Point I, for the first time on appeal, defendant argues he is entitled to a judgment of acquittal on the resisting arrest charge because the State failed to prove all the elements of resisting arrest beyond a reasonable doubt. He asserts

the State failed to establish that an arrest was being effected during the physical altercation between Devine and defendant in the State Police satellite office. Rather, he contends that defendant had already been arrested on the casino floor before being escorted to the satellite office for processing and there was no break in custody.

When a party does not properly preserve an issue for appeal, as here,[1] we may nonetheless consider whether it rises to the level of plain error under Rule 2:10-2. However, plain error "is a 'high bar,' requiring reversal only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Alessi, 240 N.J. 501, 527 (2020) (citation omitted) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting State v. Macon, 57 N.J. 325, 336 (1971)). "The 'high standard' used in plain error analysis 'provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error.'" Santamaria, 236 N.J. at 404 (quoting State v. Bueso, 225 N.J. 193, 203 (2016)).

---

[1] Defendant did not raise this issue either in his post-trial motion for judgment of acquittal or his motion for a new trial.

"The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016). "In the context of a jury trial, the possibility must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. G.E.P., 243 N.J. 362, 389-90 (2020) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)); see also State v. Dunbrack, 245 N.J. 531, 544 (2021) ("The plain error standard requires a twofold determination: (1) whether there was error; and (2) whether that error was 'clearly capable of producing an unjust result . . . .'" (quoting R. 2:10-2)). "To determine whether an alleged error rises to the level of plain error, it 'must be evaluated "in light of the overall strength of the State's case."'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

Defendant also faces a formidable bar in Rule 2:10-1. Under Rule 2:10-1, "the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court." Absent such a motion, a challenge to the verdict on appeal should be disregarded under the rule. Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 2:10-1 (2025). However, this mandate may be "relax[ed] based on considerations of substantial justice." Ibid. In that case,

"[t]he test on a motion for a new trial is whether there was a manifest denial of justice." State v. Johnson, 203 N.J. Super. 127, 134 (App. Div. 1985). Still, "a jury verdict will not be set aside unless it clearly and convincingly appears that there was a miscarriage of justice under the law." Ibid.

In considering whether a jury verdict was against the weight of the evidence,

> [w]e must sift through the evidence "to determine whether any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present." State v. Carter, 91 N.J. 86, 96 (1982). But an appellate court may not overturn the verdict "merely because it might have found otherwise upon the same evidence." Johnson, 203 N.J. Super. at 134. Appellate intervention is warranted only to correct an "injustice resulting from a plain and obvious failure of the jury to perform its function." Ibid.
>
> [State v. Smith, 262 N.J. Super. 487, 512 (App. Div. 1993) (citations reformatted).]

On the other hand, a motion for a judgment of acquittal

> is controlled by a different standard than a motion for a new trial. On a motion for a judgment of acquittal, the standard is whether the evidence, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, is sufficient to enable a jury to find that the State's charge has been established beyond a reasonable doubt. State v. Reyes, 50 N.J. 454, 458-59

(1967); <u>State v. Kluber</u>, 130 N.J. Super. 336, 341-42 (App. Div. 1974).

[<u>Johnson</u>, 203 N.J. Super. at 133-34 (citations reformatted).]

Here, the judge was not afforded the opportunity to decide either motion to preserve the issue on appeal. We also reject defendant's contention that his comment in closing argument that Devine's testimony proved that defendant's arrest occurred on the casino floor suffices to preserve the issue for appeal. Nevertheless, we are satisfied reversal is not warranted under the plain error standard, <u>R.</u> 2:10-2, because there was sufficient credible evidence in the record to support the jury's guilty verdict to third-degree resisting arrest beyond a reasonable doubt. <u>See</u> <u>State v. Pickett</u>, 241 N.J. Super. 259, 265-66 (App. Div. 1990) (stating that when a defendant fails to move for judgment of acquittal or a new trial under <u>Rule</u> 3:18-2 or <u>Rule</u> 3:20-1, "th[e] issue is raised improperly" for the first time on appeal pursuant to <u>Rule</u> 2:10-1 but may be addressed "[i]n the interest of justice . . . pursuant to the plain error rule" (citing <u>R.</u> 2:10-2)); <u>see also</u> <u>State v. Soto</u>, 340 N.J. Super. 47, 73 (App. Div. 2001) (explaining that "we may consider the merits" of a weight of the evidence argument under the plain error standard "in the interest of justice even though defendant did not

move for a new trial"), disapproved of on other grounds, State v. Dalziel, 182 N.J. 494, 504 (2005).

A person is guilty of the basic offense of resisting arrest "if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2(a)(1). The statute

> defines three grades of resisting arrest. The basic offense of resisting arrest, that is, purposely preventing or attempting to prevent a law enforcement officer from effecting an arrest, is a disorderly persons offense. It is raised to a fourth-degree crime if the prevention or attempted prevention of the arrest is accomplished by flight. Whether or not flight is involved, however, if the resistance is accompanied by physical force or violence against the officer, the crime is of the third degree.
>
> [State v. Simms, 369 N.J. Super. 466, 470 (App. Div. 2004).]

See also Model Jury Charges (Criminal), "Resisting Arrest – Flight Not Alleged (N.J.S.A. 2C:29-2a)" (rev. May 7, 2007).

The crux of defendant's argument is that the detectives had already completed the arrest when defendant was in the satellite office, so he could not have been resisting at that time. But defendant defines "arrest" too narrowly. "There is no absolute test as to when an arrest occurs. The action of the police officer must be evaluated in the context of the circumstances in which it takes

place." State v. Bell, 89 N.J. Super. 437, 443 (App. Div. 1965). "Indeed, even the use of formal language of arrest is not conclusive on this issue" and "[n]ot every detention is an arrest." Ibid.; see also Strelecki v. Coan, 97 N.J. Super. 279, 283 (App. Div. 1967) ("Officers are not required to make any formal declaration of arrest or apply manual force in order to 'arrest' a person. An arrest may be accomplished by any act that indicates an intention to take the person into custody and subject him to the control and will of the person making the arrest.").

Here, the evidence at trial revealed that defendant was irate, defiant, and disorderly, refusing to comply with instructions from State Police and Casino security officers. Lowe and Devine both testified that the detectives identified themselves as police to defendant upon arrival. Devine testified that police took defendant to the satellite office mere yards away from Pit 5 with the intention of charging him with disorderly conduct. Lowe confirmed that defendant was not free to leave the satellite office because he was detained at that time. Regardless, within seconds of entering the office, defendant tried to leave by plowing through and taking a swing at Devine when Devine blocked his path. Defendant also physically resisted the detectives' attempts to subdue and handcuff him by writhing around on the ground and spitting blood and saliva at

A-2487-22

the detectives.  As such, the evidence clearly showed that the detectives were effecting an arrest when defendant resisted by physical force or violence.  See State v. Lawrence, 142 N.J. Super. 208, 211, 214 (App. Div. 1976) (upholding resisting arrest conviction for assaultive conduct occurring during and after defendant was placed under arrest for drunk driving).

III.

In Point II, defendant argues the judge erred in denying his request to charge obstruction "as a lesser-related offense" of resisting arrest.  He maintains that "there was a rational basis for the requested charge" and that "the judge's refusal to provide it violated [defendant's] due process and fair trial rights."

During the charge conference, defendant requested an obstruction charge as a "lesser-included offense" of resisting arrest.  The judge denied the request, explaining:

> [T]he facts and the evidence that the jury heard were relative to the actual resisting arrest.  The evidence indicated that . . . defendant was going to be charged.  The investigation had been complete.  It was thereafter that he . . . resisted arrest.  He did not obstruct the actual investigation.
>
> While I understand the wording of the obstruction statute, the [c]ourt[ is] going to deny that request since the resisting arrest appears to be consistent with respect to the [disorderly persons]

14

charge that . . . based upon the facts . . . the jury can find.

And if they find, again, the additional element as to the . . . use of physical force or violence, they can answer that question[,] and that would be, of course, the third[-]degree charge.

In the final instructions, the judge instructed the jury on the disorderly persons offense of resisting arrest, as a lesser-included offense, as well as resisting arrest with physical force or violence, a third-degree crime. The jury convicted defendant of the third-degree charge and did not reach the lesser-included offense. After the jury verdict, in his motion for a new trial, defense counsel reprised his argument that obstruction should have been charged as a lesser-included offense of resisting arrest. The judge rejected the argument, expounding that "[o]bstruction is not a lesser[-]included offense of resisting arrest" and "there was no rational basis for the jury to convict defendant of obstruction but acquit defendant of resisting arrest."

The judge added:

The [c]ourt further notes that the jury found . . . defendant guilty of [c]ount [t]wo, [r]esisting [a]rrest, and found that . . . defendant used or threatened to use physical force or violence against a law enforcement officer. As such, the jury [was] instructed not to consider lesser[-]included offenses unless [defendant was] found not guilty of the charged count. The jury charge states: "you are not to render a verdict on these

[lesser-included] offenses or answer the question on the verdict sheet unless you find that the State has failed to meet its burden with regard to the offense(s) in the indictment." Here, the jury found . . . defendant guilty of the charged offense. Therefore, [it] would have not been able to consider any lesser[-]included offenses.

[(Emphasis omitted).]

Relatedly, following the bench trial, in acquitting defendant of obstruction, the judge explained:

The obstruction . . . charge under [N.J.S.A.] 2C:29-1(a) is a disorderly persons offense. It is, in the [c]ourt's mind, broader than the resisting charge.

The obstruction charge deals with various things that result in various behaviors that may result in obstructing or impairing or preventing law enforcement from executing their official duties. Resisting can be one of those obstructions.

However, in this particular case, the [c]ourt notes that the jury has already found that . . . defendant was already in what I[ will] say [was] the back of the house in the office with law enforcement in which he was then being processed. There was testimony that he was going to be charged. So clearly they had already . . . done their investigation and were now in the midst of charging him.

Thereafter, he did attempt to leave. He failed to adhere to the commands of the law enforcement officers at that time. . . . He then used force to prevent the officers from arresting him and the [c]ourt delineates arresting, physically arresting, his body as opposed to the actual law enforcement duty of

16

> processing the actual [s]ummons and [c]omplaint in this particular matter.
>
> So the [c]ourt finds that that is different with respect to his actions[,] and the [c]ourt finds that . . . the State has not met its burden.

"[A]n offense is considered a lesser-included offense 'where the proof required to establish a greater offense is also sufficient to establish every element of a lesser offense' and 'where two offenses are the same but a lesser degree of culpability is required to establish the lesser offense.'" State v. Bell, 241 N.J. 552, 561-62 (2020) (quoting State v. Thomas, 187 N.J. 119, 129 (2006)). A "court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e). "Determining 'whether an included offense charge is appropriate requires (1) that the requested charge satisfy the definition of an included offense set forth in N.J.S.A. 2C:1-8(d), and (2) that there be a rational basis in the evidence to support a charge on that included offense.'" Bell, 241 N.J. at 562 (footnote omitted) (quoting State v. Cassady, 198 N.J. 165, 178 (2009)). The rational basis test for charging a lesser-included offense "imposes a low threshold." State v. Crisantos, 102 N.J. 265, 278 (1986).

"In contrast, related offenses are those that 'share a common factual ground, but not a commonality in statutory elements, with the crimes charged in

the indictment.'"  State v. Maloney, 216 N.J. 91, 107 (2013) (quoting Thomas, 187 N.J. at 132); see Thomas, 187 N.J. at 130 ("[W]hether offenses are related is not a function of a comparison of statutory elements.  Instead, the focus is whether the offense charged and the related offense share a common factual nucleus.").  "'A court may instruct on a related offense when "the defendant requests or consents to the related offense charge, and there is a rational basis in the evidence to sustain the related offense."'"  State v. Moorer, 448 N.J. Super. 94, 105 (App. Div. 2016) (quoting Maloney, 216 N.J. at 108).

> Absent such a rational basis, giving an instruction on a related offense is improper because
>
> > a trial court cannot charge a jury on any offense requested by the defendant or suggested by the evidence. A trial court should not "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty.  The prosecutor has the primary charging responsibility[.]"
>
> [Id. at 105-06 (alteration in original) (quoting Thomas, 187 N.J. at 133).]

When a defendant makes a request for a lesser-related offense instruction, and the State objects, the court should evaluate the facts presented at trial to ensure there is a rational basis for the jury to reject the greater charge and instead convict on the lesser charge.  See N.J.S.A. 2C:1-8(e).  The inquiry becomes

18

whether the jury would have a rational basis for accepting the proposed theory of a case, not whether the jury is likely to accept the defendant's theory. State v. Mejia, 141 N.J. 475, 489 (1995).

As previously stated, N.J.S.A. 2C:29-2(a)(1) initially commands that, except as provided elsewhere in the statute, "a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest."  It then states that, except as otherwise indicated, "a person is guilty of a crime of the fourth degree if [the person], by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest."  N.J.S.A. 2C:29-2(a)(2).  The statute thereafter indicates that it is an offense of the third degree if a person does that which is proscribed in subsections (1) or (2), and "if the person:  (a) [u]ses or threatens to use physical force or violence against the law enforcement officer or another; or (b) [u]ses any other means to create a substantial risk of causing physical injury to the public servant or another."  N.J.S.A. 2C:29-2(a)(3).

In contrast, under the obstructing administration of law statute,

> [a] person commits an offense if [the person] purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical

interference or obstacle, or by means of any independently unlawful act. This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

[N.J.S.A. 2C:29-1(a).]

Notwithstanding his arguments to the trial judge, on appeal, defendant essentially acknowledges that obstruction is not a lesser-included offense of resisting arrest but asserts that obstruction should have been charged as a lesser-related offense of resisting arrest. We disagree and are satisfied that in the circumstances of this case, there is no reversible error. First, "[w]hat constitutes obstruction may often turn on the precise details of the charged conduct." State v. Powers, 448 N.J. Super. 69, 74 (App. Div. 2016). Here, the offenses of resisting arrest and obstruction are not related as they require different factual predicates.

The obstruction statute

qualifies what conduct is prohibited—including obstruction of the administration of law—by reference to how the activity is carried out—including by means of "physical interference or obstacle." By the plain and ordinary meaning of the terms of the statute, criminal liability for obstruction stems only from certain modes of behavior.

To violate N.J.S.A. 2C:29-1(a), a person must not only "purposely obstruct[], impair[] or pervert[] the administration of law" but must do so through one of the specifically enumerated acts in the statute, through "physical interference or obstacle," or through an "independently unlawful act." In its second sentence, the statute specifically distinguishes the above behaviors from failures to perform non-official duties and other conduct.

[State v. Fede, 237 N.J. 138, 148 (2019) (alterations in original).]

The "affirmative acts" under the obstruction statute differ from and are much broader than those in the resisting arrest statute. To sustain an obstruction charge, a law enforcement officer does not have to be effecting an arrest, and the defendant does not have to resist or attempt to resist an arrest, as occurred here. See N.J.S.A. 2C:29-2(a). Instead, "the obstruction must be carried out in a manner described in the statute: 'by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.'" State v. Camillo, 382 N.J. Super. 113, 118 (App. Div. 2005) (quoting N.J.S.A. 2C:29-1). Thus, to find defendant guilty of obstruction would require different evidence from what was presented during the trial.

Second, there was no rational basis to charge the jury with obstruction as a lesser-related offense of resisting as the evidence did not "present adequate reason for the jury to acquit . . . defendant on the greater charge and to convict

21

on the lesser." State v. Brent, 137 N.J. 107, 118-19 (1994). Instead, the evidence presented adequate reason for the exact opposite to occur. Although the judge instructed the jury on the lesser-included offense of resisting arrest as a disorderly persons offense, the jury did not even reach the lesser-included offense and convicted defendant on the greater third-degree resisting arrest charge. Thus, defendant failed to show that a reasonable jury would acquit him of the greater charge and convict him on the lesser. In addition, the fact that the judge subsequently acquitted defendant of the obstruction charge further demonstrates that there was no rational basis to charge the jury with obstruction as a lesser-related offense of resisting arrest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2487-22